Okay, thank you. I would like to say three minutes for rebuttal if I may. You know what, can I ask you counsel, are you able perhaps to get a little bit closer to whatever microphone you're using? I can turn up my volume, but you're a little bit faint right now. Let me see what I can do here. Is this better? Now let me just turn up my volume. Maybe it's just on my end. Okay, go ahead. Is this any better? I'll try to speak louder too. Yeah, use your outdoor voice. I have a pretty good outdoor voice, so I'll try to keep that in mind. Your honors, the essential question in this case is whether, because the state filed a consumer fraud action seeking civil penalties, are they entitled to younger abstention by virtue of that fact alone? I think that's really the essential dispute. Now Sprint could have set a black letter rule here that if you're a civil enforcement action, you get abstention, but it didn't do that. Civil enforcement action may get you in the door to be considered for younger abstention, but it's just the beginning of the inquiry, not the end. What Sprint said is that you then have to assess a multitude of factors to see how close this case is to a criminal case. Has the state treated it like a criminal case? And that is in fact the way this court has analyzed the issue post-Sprint as recently as 2019 and the Herrera versus City of Palmdale case. That case as well was a case in which the city of Palmdale actually saw some wrongdoing going on. They saw a public nuisance that they thought was a danger to people's health. What they did was they executed a search warrant and they ended up in action that sought, among other things, civil penalties. What is important for the purposes of this case is how this court analyzed that issue. It didn't just say, oh this is a nuisance case, this is seeking civil penalties, end of story, you're entitled to younger abstention. No, what the court did was go through the Sprint factors to see if the state, if the city was treating it as a criminal prosecution. And the court relied on, this court relied on, the fact that there was an investigation, there was a warrant that was secured by probable cause, the warrant showed 400 violations, the state was behind that, the state was concerned about something that was happening that was putting its citizens in danger and only then filed the action. So this court has actually adopted already the reading of Sprint that we are urging here. Counsel, let me offer a different reading of Sprint and tell me why you disagree with this. I read Sprint as saying, essentially, look, we have these three categories of general categories of proceedings that are going to qualify for younger abstention. The threshold sort of scrutiny of the proceeding that we're going to require is at the 30,000 foot level. Just the general character of that proceeding, does it fit within one of these three boxes? And if it does, then the question becomes whether one of the exceptions should apply. And so why wouldn't we appropriately view Sprint as setting up a framework where all of the case-specific qualities that you are focused on here really fall into the exception bucket, which you've said all we should be looking at is the general character of this type of proceeding, not with respect to the very granular level of detail that you're trying to get us to focus on. Yeah, I think if you look at page 592 of the Sprint decision, I think it answers that question. Because what the court did was it went through a series of cases like Middlesex, like Traynor, like Huffman. And the way the court characterized those cases is they were civil enforcement cases. So for example, in Moore, you have child abuse prosecution. In Traynor, you have welfare fraud that could have been brought as civil, could have been brought as criminal. All of those cases actually started out as civil enforcement actions, just like this one. But what the court said was the thread that tied those cases together was not there being civil enforcement actions, it was the fact that they were akin to criminal prosecutions. And the court went through a number of factors, like in a criminal prosecution, you're going to see an investigation. You're going to see the state taking ownership of this case. You're going to see... Yes, but counsel, counsel, let me just stop you there because proceeding does fit all of those. It nails every single one of those characteristics, except, and this is your big complaint, that you say it was private counsel who played a sort of improper role in motivating the state in bringing the action. And that strikes me as falling into the category of, okay, well, maybe there's some bad faith here. Maybe there's some harassment, but that goes to the exceptions, not to whether this proceeding as a general matter fits within one of the three buckets. So I think your honor is doing what the state is doing here respectfully. I think there's an important state interest problem of the three middle sex factors that does look generically at the type of proceeding. So that's why we're not arguing important state interest, because the Knopsey case, Justice Scalia in that case, squarely held that when you look at whether something is an important state interest, you look at the generic proceeding. But the sprint factors go before you get to those factors and ask, look at the character of the action and ask whether it is akin to a criminal prosecution. And if you look at every one of the cases that Sprint relied on, none of them just rested on the mere fact that the state was an actor pursuing a civil enforcement action. If that was what got you into the exception, the Sprint court would have said civil enforcement actions are entitled to abstention, subject to the three middle sex factors, full stop. The court had to be doing something different. And when you look at where the court started from, the court actually, if you look at the early abstention cases, including like Younger itself, it kind of turned it on its head. Sprint started out by saying, courts, you've got to adjudicate cases that are before you unless they fall within a very narrow exception. And the court saw that around the country, multiple district courts were kind of generally applying Younger whenever there was a civil enforcement action. And I think Sprint was trying to do was rein that in by saying, no, it's not just any civil enforcement actions. It's those that really look like criminal prosecutions. But counsel, I mean, if at least part of the point, a significant part of the point of Younger is, you know, federal state comedy. And doesn't it seriously undermine that interest to put the federal court into the position of, you know, let's, I mean, let's bring in the state attorney general and ask her like, well, what sort of investigation did you really do and have the federal court, you know, sort of second guessing the decision of the state and bringing the case? Well, first of all, my argument is not that there's anything improper about what the state did here, subject to the First Amendment. We're only talking about whether this is akin to criminal prosecution and warrants abstention. That's the full question. So the state can kind of treat it as more akin to a criminal prosecution, but when it doesn't treat it as a criminal prosecution, when that's not the state's perspective in the case, it doesn't fall in that narrow category. But I had the same question Judge Miller just asked, because it seems like your basis for saying that it's not akin to a criminal prosecution is that private counsel were involved. It was private counsel who did the investigation. And in order for us as or the district court to figure out whether you're right about that, it's a very intrusive look into the state's methods. It seems contrary to what the purpose of Younger is about. I don't think it is at all. If you look at all, in fact, when I've looked at the Ninth Circuit cases post-Sprint and even the cases from other circuits, every one of those cases, the state has put in evidence of what its investigation is. This is the only one where the state has put nothing in the record of what this quote-unquote investigation is. And it wasn't that hard to do, because if the state is treating it as akin to a criminal prosecution, there will clearly be evidence of that. There will be subpoenas against the company. There will be witness interviews. There will be complaints from citizens that the state has followed up again. If you look at the city of Palmdale and even Monster Beverages, which is a case that the state of Hawaii relied on, in both of those cases, the city of San Francisco and the evidence to the district court that we did an investigation and we took this seriously. Here, the state has none of that because it is relying primarily on the pre-Sprint jurisprudence of important state interests and falling on this idea that if you just file an enforcement action, then you're home free for abstention. Now, the point about the contingency fees, and I've read your Honor's decision in American Bankers. I know the court, I know the state is entitled, I may not agree with all aspects of it, but I know the state is entitled to use contingency fee lawyers. But the contingency fee lawyers, as your Honor pointed out, don't have the apparatus that the state has to do a real investigation. I mean, this is a deception case. Private lawyers who, at that time, haven't even been retained by the state, they haven't the power to go and talk to the company to send us a letter, like the city of San Francisco did at Monster, and figure out if there was a basis to say that the company acted with deception. Only the state can do that. And so that, so when you have private... Well, doesn't that cut the other way, though? I mean, if with whatever tools the private council had, they had enough basis to file this lawsuit consistent with Rule 11, doesn't that mean it's actually worse, not better for your client? No, it makes it more akin to a civil prosecution, because if you look at the underlying complaint here, most of the allegations here are based on information, I believe. There are no internal company documents. Basically, and this is a growing trend of private lawyers representing states in these kind of cases, and I think I listened to the oral argument at American Bankers. One of the judges even commented about that these cases would never have been brought, but it's a freebie for the state. If the state was concerned and thought there was criminal activity going on, or very serious activity, they would have called us and sent us a subpoena and said, we want to see your documents. That's what would happen in a case that's akin to a criminal case, and that sometimes happens. There are other... Counsel, if, I mean, if, suppose that people in Hawaii, you know, thought that this lawsuit was a bad idea, and so some people complained to the state attorney general and said, you know, why did you bring this bad lawsuit? It seems to me unrealistic to suppose that the attorney general would say, well, you know, don't blame me. Like, it was these private lawyers. I had nothing to do with it. I didn't do the investigation. And assuming we accept that premise, if the attorney general is going to be politically accountable for this decision to bring this lawsuit, I mean, why doesn't that, I mean, why does it matter that the actual litigation is being done by private lawyers? It seems to have, doesn't that guarantee sufficient state involvement to satisfy the concerns in Sprint? No, no, no, your honor. I mean, again, I'm not saying, I understand American bankers. I'm not saying the state can't do that, but actually Hawaii has a provision that precludes the use of contingency lawyers in criminal cases. So I think it's an argument. The fact that this case has basically been outsourced to outside lawyers, it may be legitimate for the state to do, but it certainly counsels against it being akin to a criminal prosecution. I mean, can we imagine a criminal case of fraud being brought with allegations of deception by the company, with absolutely zero evidence of what the defendant's state of mind is? You can't. Now, can you imagine a civil case like that being brought? Yes, they happen every day in product liability cases. And that is what this case is more akin to. So again, the state in its briefs is suggesting that we are somehow attacking their ability to use contingency lawyers. We're not. We're just seeing there are some consequences when you decide to outsource everything. And by the state is saying that these lawyers did an investigation, but they didn't put in any evidence of what that investigation was. They didn't do like the city of Palmdale did, present evidence that they had probable cause to issue a warrant, and then issued that warrant and found 400 violations. They just said they did an investigation. But what is more, they have conceded that that quote-unquote investigation done by the outside lawyers was done before they were retained as Hawaii Council. And it was done while they were private lawyers, not deputized, and no powers of the state whatsoever. What the state also has not disputed is that the state had done zero to corroborate the pretty brazen allegations that were being made in this complaint. Nothing. I mean, it's my position that if they had done a real investigation here like they would have done in a criminal case, this case would never have been brought because the science just doesn't comport with the facts. So that's a long way of saying, Judge Miller, that I'm not saying that the state can't do this. It's happening more and more, but I think under Sprint, just like you did, this court did in the city of Palmdale, just like the court did in Monster Beverage, you got to look to see if the state is treating this as akin to a criminal prosecution or not. In this case, the state attorney is not even on the signature block of the complaint. It's signed completely by private lawyers. How can that be an example of the state treating this as akin to a criminal prosecution? I think I might have gotten over my rebuttal time. I'm not sure if this clock... It counts down. You've eaten into your rebuttal time, but we'll make sure you have two minutes. So unless the court has any more questions, I'll wait till my rebuttal. Okay, very good. Let's hear from counsel. May it please the court, Mano Moriarty for L.E. Clare Connors, Attorney General of the State of This state case nails all the characteristics of the Sprint proceeding. We've got a state civil enforcement action under UDAP, and I'll use UDAP, if that's all right with the court, to refer to unfair and deceptive acts and practices. It's brought by the attorney general, the only person, say for one public official, entitled by statute to bring the action, seeking civil penalties. Then you turn to the exceptions, as Judge Watford, you put it, and they're not even arguing that there's an exception to Sprint here. The district court held that this was younger abstention material, and it's exactly the sort of action that's been recognized as quasi-criminal. So it's interesting that Platt v. Council doesn't mention this court's Williams decision. Williams is the Ninth Circuit decision in which the state of Washington brought consumer protection action under the state's UDAP law, and under the state's UDAP law, the attorney general is entitled to recover for deceptive practice. So in Williams, this court said that is like the quasi-criminal nuisance action in Huffman. Now that is exactly the same language that Justice Ginsburg uses in Sprint. She cites Huffman as an example of quasi-criminal action. Now, not only does she cite Huffman, but to my friend's position that we're required to prove some sort of state of mind in the underlying UDAP action, that's factually wrong. Under Hawaii law, we don't have to prove a state of mind to prove a UDAP case. In addition, it's clear that in Huffman, you don't have to prove a state of mind to prove a public nuisance action under Ohio law. I want to also address one contention that I would disagree with, that there's no record evidence here of an investigation. You need to look no further than the Platt-X counsel's complaint in the federal action in which they cite to this office, investigation, before bringing the case. So they cited to that, and they don't dispute in their briefs that there was a national investigation by private counsel. They may call into question the resources that they bring to bear, but as Judge Friedland correctly pointed out, that's not exactly a factor that cuts in their favor. And at the district court level, we have Judge Otake analyzing this area and say that there is no litmus test for investigations under Sprint. And let me give you an example of that. In Sprint cites to Moore v. Sims as a case that's quasi-criminal and in which younger abstention was appropriate. In Moore v. Sims, Texas sued, they brought a child in emergency protection action the same day as they received one report of child abuse. That was the investigation. They sued the same day. Our allegations are clear in the state court case. We say that they lied and deceived the public by spending six years in litigation where these issues have been fought. And on the eve of trial, really what they're doing is engaging in forum shopping. That's precisely what younger abstention is designed to prevent. As Judge Miller noted out, this is an area in which the federal courts have recognized that it's proper to show comedy to the state courts and stay their hand and hold back from interfering with an ongoing state quasi-criminal prosecution. And it allowed that decision of the state to bring this action in the first place is one that is not subject to second-guessing by private plaintiffs. The state attorney general decides when and where to bring the enforcement action under UDAP. And they decided to bring it in state court. Now, I'm going to come back again to Judge Watford's point that you don't look further than what type of case this is. Because I think that's exactly what the case law shows. The case law shows that when you have a consumer protection UDAP action brought by the state attorney general, you don't look further. So that's Williams. But why does Sprint talk about investigation then? You know, it's interesting that Sprint talks about investigations. I believe they say commonly involved or routinely involved. And the cases that they cite are Dayton, which involved a civil administrative proceeding brought by the Ohio Civil Rights Commission. It also cites Middlesex. Middlesex is a case brought by the state, I believe it's the case. And those cases clearly involved committees that had a statutory requirement to conduct investigations before bringing charges. There is no corollary under state law for UDAP actions brought by the attorney general. The attorney general really has the authority to bring the actions once they've made the determination the action is worth bringing. And as Judge Friedland noted, there is a rule 11 standard here that the attorney general has to satisfy to file the case. So are you basically saying that that last part of the paragraph in question in Sprint, where the court references investigations are commonly involved, is just superfluous? We don't need to look at that? Not so, Your Honor. So as I mentioned, the appellate's federal district court complaint refers to my office's investigation of this matter. So there is record evidence that the attorney general of the state of Hawaii conducted an investigation. And I would refer also back to the Moore v. Sims case. In Moore v. Sims, you get this single complaint of child abuse followed by emergency protection proceedings initiated the same day. So you've got perhaps from start of business in the morning until close of business, close of the court's filing window in the afternoon, perhaps eight, 10 hours. And the state of Texas files the lawsuit, conducts whatever investigation of the allegations that they're meant to conduct, and decides the lawsuit is worth filing. Now Sprint, and Justice Ginsburg said, this is an example of a quasi-criminal case in which younger is appropriate. So can you describe, you said there's record evidence of your office doing an investigation, what are you referring to there? I'm referring to the record at 40, I believe it's 46. I could be wrong about the pin site. But the investigation itself is of course not really the type of thing that we can disclose and divulge, because the record investigation is protected by the government's deliberative process. So to the suggestion that we're required to actually divulge what investigation that the Attorney General went through, I would wholeheartedly object and contend that that would undermine law enforcement objections if we're actually required to do so. I mean, can you imagine sort of a remand for an evidentiary hearing on what investigation the Attorney General did and the Attorney General being called to the But so I'm back to thinking that you are arguing that we should ignore the part of Sprint that talks about investigation. I don't really, I mean, right now you're saying we shouldn't ask about that. So I don't really understand what you think we're supposed to look at for investigation. I think for purposes of Younger, you should accept appellant's representation that my office conducted an investigation. I think that's sufficient to satisfy Younger's discussion of investigation. And in that regard, they say it was just private counsel who did the investigation. You're calling that your office's investigation. And so you're saying that's enough. But not at all. So there's both, right? We're saying, and it's not only us, it's the pleadings in the federal court case that say they do not dispute that a national investigation was conducted by private counsel. I don't think my friend is contesting that. But also that our office, the Attorney General's office internally conducted an investigation. So I thought they were contesting that. And I'm not sure I'm seeing on the page you cited where it says that that happened, but maybe I just am missing it. I'm looking at, Your Honor, I'm looking at paragraph 66 of the federal court complaint, the top of record at 46. The second sentence, it, meaning the state, conceded in discovery that the UDAP action was a result of an investigation or inquiry by the Attorney General only. And not by Hawaii Medicaid, but by the UDAP itself. And I'm not sure I'm seeing that. So I thought that they were now saying that that meant that the Attorney General had used the private counsel. Now, it may not matter. Maybe your argument is investigation doesn't matter or private counsel is enough. But I had not understood that there was agreement between the parties on the idea that the Attorney General's office without private counsel had done investigation. You know, I suppose there are two ways to read this, but it's interesting because I didn't notice in the reply materials that the appellants were actually saying that this office did nothing. Well, I'm not sure I noticed in your brief that you said you did do anything. I thought you were basically arguing things like it's okay to use private counsel. You're correct. We are arguing that. But I can't. I don't think I can go too much further into describing what our office did. Did you say in your answering brief that your office did its own investigation? I apologize. Maybe you did. And I'm just not remembering that part. Yes, Your Honor. And I can't point you to a specific page at this point. But yes, um, we did an investigation that was consistent, certainly consistent with our Rule 11 obligations for reasonable inquiry and investigation into the bona fides of the case before filing. We do not, the AG controls this case as it controls all UDAP public actions and does not give its entire authority to private counsel to prosecute the case without first verifying the bona fides of the case. And that's, so the UDAP statute in question in Hawaii requires it to be the Attorney General who brings the case or one other public official. Every settlement in any UDAP action has to be approved by the Attorney General, even if the case is prosecuted using private counsel. And I don't, there's nothing, I'm not aware of anything inconsistent between vindicating the public interest in enforcing Hawaii's consumer protection laws with allowing the private attorneys to obtain a fee in this case. I do want to briefly address the First Amendment. And there is no dispute among the parties at this point that the appellants can litigate their First Amendment claims in state court. There is no dispute among the parties at this point that the appellants can litigate their First Amendment claims in state court. And in fact, they raised those very same First Amendment defenses in the removal proceedings and subsequent state court answer six years ago. We're not trying to compel their speech in any fashion just to prevent them from lying and deceiving the Hawaii public. And I would submit, is the First Amendment issue even central to the UDAP case in state court? And the 2014 remand order, when the appellants first sought removal, after the appellants first sought removal to federal court on the basis of federal jurisdiction, reveals that FLAVC's counsel at that time didn't raise the First Amendment as a basis for federal arising under jurisdiction. So at that point in time, at the very least, FLAVC's counsel made a strategic decision not to say that the First Amendment was a core federal issue that went to the heart of this case. Well, I'm not sure they could have, right? Because it's really a defense. I mean, could they have? I'm not sure they could have said that this was a federal question case. They did, Your Honor. Well, they tried, but they failed, right? And that's because it's not a federal question case. So I'm not sure. I don't quite understand the argument you're making right now. Simply that they raised arguments as to why this was a core federal case, and the case that the district court should assume it's arising under jurisdiction. And the First Amendment was not among the reasons that they cited as a basis for federal jurisdiction. Preemption under the FDCA, and I believe one other federal issue, but not the First Amendment. So we've had six years to sort of hammer out the issues in the state court proceeding and what's at stake. I think we should allow this case to go to trial in state court, where the state court's ready to make the factual and legal determinations after the evidence has been carefully vetted and gathered. Heavy motions practice has already sharpened those issues. And I believe the court understands our position, and I'm happy to take questions. Counsel, I know you're past time, but you mentioned the trial is coming up. It's my understanding the trial is set for late October. Is that still the case? That's still correct, Judge Miller. October 26th is when it starts. And have, I mean, maybe this is a question for the other side, but no, no continuance has been sought pending the outcome of this proceeding? Your Honor, I'm not aware of any continuance, and I would say there is a status conference scheduled for tomorrow, at which we most likely will discuss some of the upcoming trial. Thank you. Thank you, counsel. Appreciate your argument. Let's put two minutes on the clock for counsel for appellant. Paragraphs 15, paragraph complaint number 15, complaint number 101 makes clear that our allegation was there was no state-initiated investigation. We also say that the state of Hawaii conceded in its opposition on page 42 and 43 that the quote-unquote investigation was what was done by outside counsel and then referred to six years of discovery. Obviously in civil cases, you do, you file a complaint on information and belief and then go through discovery. You don't do that in criminal cases. I want to just, and also Hawaii's counsel said a couple of times that the companies lie. I don't know how they would know that without doing a real investigation before filing the complaint. But going back to Sprint, if you look at Sprint, I think this is the key language. It says, nor does IUB's order rank as an act of civil enforcement of the kind to which the honor has been extended. Then it goes on to say such enforcement actions that warrant abstention are characterly initiated, then it goes through a series of factors. What the court was doing was limiting this, limiting abstention to those proceedings that really looked like criminal prosecution. I think it was doing a categorical, it was taking a more categorical approach. I would say as of with respect to this action, it is commonly preceded by an investigation. It fits the bill. Now whether in this specific case, arguments to suggest, well no they didn't and therefore it's been brought in bad faith, then you argue exceptions. But what the court in Sprint is talking about is not what you're trying to infuse into that threshold determination that we're supposed to make. Your honor, if that was the case, then every civil enforcement action seeking civil penalties would qualify as entitled to your abstention. But that is clearly not what the court said. And just to put a finer point on it, when the court then talks about the middle sex factors, it specifically rejects the proposition that the generic state interest is sufficient to get younger abstention because it said, because Justice Ginsburg wrote, if that was the rule, then you'd get younger abstention in every case like this. And that is why what Sprint was doing was limiting the category. And just let there be any doubt about that. What she says at the end, and this is in the penultimate paragraph, the three middle sex conditions recited above were not dispositive. They were instead additional factors appropriately considered by the federal court before invoking younger. If this court interprets Sprint to mean just the generic proceeding, then we will be doing exactly what Justice Ginsburg cautioned against and be conflating the important state interest part of the middle sex test with this newer, akin to criminal prosecution test that Justice Ginsburg articulated and that this court has employed in the city of Palmdale case. Thank you very much, counsel. That's it. Yes, we appreciate the arguments in this case. The case just argued is submitted and we will adjourn for the day.
judges: Watford, Friedland, Miller